FOURTH DIVISION
December 23, 2010

No. 1-08-0758

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 1657 |
| | ) | |
| ROBERT SMITH, | ) | Honorable |
| | ) | James D. Egan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the opinion of the court:

Here, we consider the appeal of a defendant who pled guilty to murder during the middle of his trial for the beating and death by drowning in a bathtub of a two-year-old child, after which defendant was sentenced to 32 years in prison. Defendant subsequently filed a motion to withdraw his guilty plea and the trial court found defendant had not been admonished that a three-year mandatory supervised release (MSR) term would be added to his sentence. To deal with this issue, the trial court reduced the sentence by three years and did not allow defendant to withdraw his guilty plea. On appeal, defendant asserts he is entitled to withdraw his guilty plea because it was based on a plea agreement that was improperly negotiated with the trial court, rather than the State, and that he was entitled to the remedy of his choice for the court's failure to admonish him regarding his MSR term. We affirm.

BACKGROUND

In 2001, defendant and Maria Moon were charged with six counts for the first degree murder of Maria's daughter Miracle Moon on December 7, 2000. Those counts alleged that Miracle was killed when codefendants inflicted blunt trauma injuries upon her and held her head

under water. Codefendants were also charged with two counts of aggravated battery of a child based on beating Miracle with their hands, a cord and a belt on the same day. Codefendants were further charged with aggravated battery of a child based on holding Miracle's head under water on December 5, 2000. Codefendant Maria, who is not a party to this appeal, was granted a severed trial while the State sought the death penalty in defendant's case.

Immediately prior to beginning jury selection on April 28, 2005, the following colloquy ensued:

"MR. HICKS [Defense Counsel]: Your Honor, previous to today, there have been some informal talks between myself and the prosecution about maybe resolving this matter. My client was desirous to be admonished to do a [Rule] 402 to see what the Court's position might be.

THE COURT: Mr. Smith, based on what your attorney stated I'll join into a conference with your attorney and the State's Attorney. I may hear evidence about you, about the case I wouldn't normally hear at trial. At the end of the conference, if you're not satisfied with what offer comes out of the conference, the case will remain in this courtroom. The jury is outside the courtroom right now. We'll go right to jury selection, do you understand that?

DEFENDANT: Yes.

THE COURT: And you're granting permission for your attorney to enter into the conference?

DEFENDANT: Yes."

1-08-0758

The case was then passed for a pretrial conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402). When the proceedings resumed on the record, the court began jury selection. Neither the parties nor the trial court stated for the record what had ensued during the conference.

On April 29, 2005, trial began and the State presented the bulk of its tragic but straightforward case, including nine witnesses and defendant's videotaped statement, which was published for the jury. The evidence presented at trial revealed that in December 2000, defendant was living with codefendant, their daughter, and the victim, Maria Moon's two-year-old daughter. Defendant, who would whip the victim when she misbehaved, was trying to potty train her. The victim, however, would frequently "doo doo" in their apartment. When these accidents occurred, defendant would force the victim to sit on a "training potty" for three to four hours, would spank her lower body and would occasionally punish her by bathing her in cold water. Defendant and codefendant sometimes used an extension cord to discipline the child. On the fifth or sixth of December, defendant discovered that the victim had defecated on herself and, as punishment, gave her a cold bath. He pushed her head under water several times until she was no longer breathing. Defendant said that he successfully performed cardiopulmonary resuscitation on the victim but declined to take her to the doctor because there were too many bruises on her body.

On December 6, 2000, defendant and codefendant left the victim alone in the apartment for six hours. They returned home at 11 p.m. to find that the victim had defecated in her bed. Defendant and codefendant each hit the victim five or six times with a belt, forced her to eat dinner on her training potty and forced her to stay on the training potty all night. At 8 a.m. the next day, defendant discovered the victim had gotten up from the training potty, defecated on

3

herself and in the kitchen. Defendant spanked her with his hands when he could not find his belt. He then filled the bathtub with cold water and held her under the water for two to three minutes. When the child eventually floated to the surface, she did not look normal and lay motionless. Believing she was dead, defendant told codefendant not to forget that the victim was in the bathtub and then left for work. Defendant believed that if codefendant discovered the victim's body in the bathtub, codefendant would believe she was responsible for the victim's drowning.

After the State had presented the aforementioned evidence, defendant apparently reconsidered the possibility of pleading guilty to the charges because, on May 3, 2005, the following colloquy ensued outside the presence of the jury:

"MR. HICKS: At this time, Judge, we recognize the previous offer that you have made in this case of 32 years on a plea of guilty to first degree murder. At this time my client is asking leave to withdraw his previously entered plea of not guilty, waive the jury trial in progress with [*sic*] now and enter a plea of guilty.

THE COURT: Is that correct, Mr. Smith[?]

DEFENDANT: Yes."

Defendant was immediately admonished, in pertinent part, as follows:

"THE COURT: Mr. Smith, the charge that I am informed you're pleading guilty [to] is [that] on December 7, 2000[,] in Cook County, you committed of [*sic*] offense of first degree murder in that you, without lawful justification intentionally or knowingly inflicted blunt trauma injuries to Miracle Moon and held her head under the water which killed Miracle Moon. Is that the charge you are

4

pleading guilty to?

DEFENDANT: Yes.

THE COURT: Do you understand that charge, first degree murder, is a class unto itself; that is, that you could be sentenced in a normal case between 20 and 60 years, however based on the charges in this case, you were looking at the death penalty. So you could be sentenced anywhere from death to life to a number of years up to 100 years, do you understand those are the possible penalties involved in your plea of guilty?

DEFENDANT: Yes."

Following further admonishments, the court proceeded to the factual basis for the plea.

"THE COURT: I'm not sure if we should put more of a factual basis on than we have heard already.

MR. MURPHY [Assistant State's Attorney]: Judge, there isn't really that much left.

MR. MAGATS [Assistant State's Attorney]: We stand on the evidence that was presented to this Court and the defendant on Friday the 29th, yesterday, the 2nd and today, May 3rd.

THE COURT: Defense?

MR. HICKS: We will stipulate to that.

THE COURT: Stipulate to that evidence?

MR. HICKS: Yes.

THE COURT: Mr. Smith, let the record reflect you have been advised of the possible consequences of the plea of guilty and after being so advised you persisted in the plea; I will therefore accept your plea of guilty to the murder charge, and there will be a judgment on the finding."

After defendant waived a presentence investigation report, the following colloquy ensued:

"THE COURT: State, in aggravation.

MR. MAGATS: Judge, he has a prior conviction, 1986 for burglary and 1997 received a concurrent four-year IDOC term for delivery of controlled substance, aggravated battery, aggravated battery did not involve a child.

MR. HICKS: We stand on the previous conference we had Thursday, Judge.

THE COURT: Mr. Smith, is there anything you wish to state before I impose sentence?

DEFENDANT: Just I don't know how it came about, but, I didn't, you know hold this child under the water. And all that what I seen, I could never do a child like that.

THE COURT: Well, Mr. Smith, you have a right to have this trial continue. When you plead guilty you're saying that you did in fact did [*sic*] this act. It's your right to have the trial continue or you can plead guilty.

DEFENDANT: I just want to plead guilty.

THE COURT: You're doing that of your own free will, no one is forcing

you to plead guilty in this case?

DEFENDANT: No.

THE COURT: You're making admission to the facts that have already been presented to the Court, is that correct?

DEFENDANT: Yes.

THE COURT: Mr. Smith, I will accept your plea of guilty to the Count 1 murder charge and as I informed your attorney this afternoon, I would reinstate the offer I made before trial.

I will sentence you to 32 years, Illinois Department of Corrections, that is 100 percent time on a murder sentence.

Even though you pled guilty, you have a right to appeal, if you wish to appeal, you must within 30 days file a written motion asking to withdraw this plea of guilty. That must be in writing and contain all the reasons you wish to set forth for your motion to withdraw the plea of guilty.

You also have 30 days within which to file a motion for reconsideration of sentence. That motion must also be in writing and filed within 30 days. Anything you wish the appellate court to rule upon must be contained in the motion to withdraw the plea of guilty or the motion to reconsider sentence and must be in writing or they will not consider it.

If those motions are denied, you would have 30 days from that date to file your notice of appeal. Do you understand what your appellate rights are[?]

7

DEFENDANT: Yes."

The court granted the State's motion to nol-pros several counts. Aside from count I, for which defendant entered his guilty plea, it appears that all other counts had been nol-prossed before defendant pled guilty, so that no other counts remained pending. It is undisputed that the trial court did not admonish defendant that he would serve a three-year MSR term in addition to his prison term.

On May 26, 2005, defendant, with Hicks' assistance, filed a motion to withdraw his guilty plea, specifically alleging that he did not fully comprehend the ramifications of his guilty plea, that trial counsel forced him to plead guilty and that his guilty plea was involuntary. Assistant Public Defender (APD) Greg Koster was thereafter appointed to represent defendant. For nearly three years following the filing of the aforementioned motion, numerous continuances occurred for reasons unrelated to our disposition of defendant's appeal.

At a hearing on February 21, 2008, APD Koster informed the court that defendant was withdrawing his previously filed motion and would then seek to withdraw the plea based upon the court's failure to admonish defendant regarding his MSR term. APD Koster tendered to the court a copy of his motion. The assistant State Appellate Defender represents in a footnote that despite diligent efforts to locate the written amended motion to withdraw, it cannot be found. Neither party on appeal has alleged that the motion contained any issue other than the lack of MSR admonishment.

APD Koster argued, in pertinent part, that the court could either reduce defendant's sentence by three years or allow him to withdraw his plea but that defendant's choice of remedy,

the opportunity to withdraw his guilty plea, should be given considerable if not controlling weight. APD Koster argued that allowing defendant to withdraw his guilty plea would not prejudice the State and that neither the passage of time nor the fact that the State had already presented its case mattered because all of the State's witnesses were still available.

The State argued, in pertinent part, as follows:

> "I guess we don't have a traditional negotiated plea between the state and the defendant. If you will recall the circumstances in the time line behind the defendant's plea was during the fourth day of trial. During the lunch break on that day, the defendant's trial attorney Luther Hicks at the defendant's behest approached you and asked if the defendant can have the same offer that was made to him at the [Rule] 402 conference by your Honor in between jury selection and opening statement. You told Mr. Hicks that you would give the defendant, if he were to plead guilty, 32 years in the Department of Corrections."

The State argued that defendant had requested a 32-year sentence when he pled guilty and the proper remedy was to reduce his sentence to 29 years in prison, thereby giving him the benefit of the bargain. The State also argued that a sentence reduction was appropriate "[b]ased on all the facts and circumstances in this case, the fact it was not a negotiated plea and offer, rather an offer from the Court, it was an offer the defendant sought and it was a benefit he sought, especially in light of the fact it was a capital case and the state was seeking the death penalty, he got a substantial benefit at that time when the Court generously left open its offer pretrial during the fourth day of trial."

1-08-0758

The trial court agreed that defendant had not been specifically advised of his MSR term and the only question was to decide the appropriate remedy, stating as follows:

> "If Mr. Smith had pled guilty, before leaving the lockup on that day, stated he wanted to withdraw his plea of guilty, of course it would go back towards a new trial; that in this case we were in the middle of trial. We had put on witnesses. The state had put forth its case, and it was through the defendant's request that he sought to have the original offer placed back."

The court found that the witnesses had been present and the parties had been ready to proceed to trial. In addition, the court found it was relevant that defendant "[a]sked for and was given his original offer of 32, and it was the court's or -- it was not a negotiated plea with the state's attorney office. It was a request by the defense to the court and I reinstated that offer of 32 years." The court reduced defendant's sentence to 29 years in prison with 3 years of MSR.

On appeal, defendant first asserts he must be permitted to withdraw his guilty plea because it was entered based on a plea agreement which was improperly negotiated with the trial court, rather than the State, as prohibited by Rule 402(d). Defendant contends that because he pled guilty under the mistaken impression that the trial court had authority to negotiate a plea agreement, his guilty plea was involuntary and his conviction is void. In opposition, the State contends that defendant entered an open guilty plea, without any guarantee of receiving a specific sentence. Because the nature of defendant's guilty plea and the trial court's allegedly improper involvement in plea negotiations both require determining whether the trial court or the State negotiated a plea agreement, we address these matters simultaneously.

10

## ANALYSIS

A defendant has no absolute right to withdraw his guilty plea and carries the burden of showing why withdrawal is necessary. People v. Dougherty, 394 Ill. App. 3d 134, 140 (2009); People v. Stevens, 324 Ill. App. 3d 1084, 1090 (2001). Leave to withdraw a guilty plea will be granted where required to correct a manifest injustice and, relevant to defendant's argument on appeal, a defendant should be permitted to withdraw his plea where the plea was entered based on a misunderstanding of law or the facts or where the ends of justice would be better served by presenting the case to a jury. Dougherty, 394 Ill. App. 3d at 140; Stevens, 324 Ill. App. 3d at 1090. We generally review the trial court's ruling on a motion to withdraw a guilty plea for an abuse of discretion. People v. Bilelegne, 381 Ill. App. 3d 292, 295 (2008). Nonetheless, because defendant never brought this issue to the trial court's attention and the trial court had no opportunity to exercise its discretion in this instance, we review this issue *de novo*. For the same reason, we find defendant has forfeited this issue.

Supreme Court Rule 604(d) provides, in pertinent part, that "[u]pon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." 210 Ill. 2d R. 604(d).

At the hearing on defendant's motion, defendant argued only that the trial court failed to admonish him regarding his MSR term. Thus, the record indicates, and the parties do not otherwise represent on appeal, that defendant's motion did not challenge the court's participation in the plea agreement. As stated, defendant's written amended motion to withdraw the guilty plea is not included in our record. The appellant carries the burden of presenting a complete record on

11

appeal (People v. Toft, 355 Ill. App. 3d 1102, 1105 (2005)) and any doubts arising from an incomplete record will be construed against the defendant (People v. Banks, 378 Ill. App. 3d 856, 865 (2007)). Although defendant states in a footnote that diligent efforts to locate the written amended motion were unsuccessful, this conclusory explanation is insufficient to excuse the absence of the motion from our record and we presume the transcript accurately reflects that this issue was not raised in the trial court. See Banks, 378 Ill. App. 3d at 865 (a defendant seeking to be excused from an incomplete record must show that the missing record is necessary for review and that he is not at fault for the incomplete record). Significantly, had this issue been raised, the trial court would have had the opportunity to clarify any existing ambiguities in the record regarding its participation in the plea agreement.

More importantly, we find any error arising from the trial court's participation in arriving at a plea agreement was invited by defendant. It is well settled that a defendant cannot request to proceed in one manner in the trial court and later assert on appeal that the course of action used was erroneous. People v. Carter, 208 Ill. 2d 309, 319 (2003); People v. Major-Flisk, 398 Ill. App. 3d 491, 500 (2010). In addition, a defendant's invitation for the trial court to use a procedure later challenged on appeal surpasses mere waiver. People v. Harvey, 211 Ill. 2d 368, 385 (2004). To allow a defendant to use the exact action he procured in the trial court to obtain reversal on appeal would offend every notion of fair play and encourage duplicitous conduct. Harvey, 211 Ill. 2d at 385. The purpose of the invited error doctrine is to prevent a defendant from unfairly receiving a second trial based on an error which he injected into the proceedings. People v. Pryor, 372 Ill. App. 3d 422, 432 (2007). Furthermore, our supreme court has declined

to review a claim for plain error where the alleged error was invited. People v. Patrick, 233 Ill. 2d 62, 76-77 (2009).

Here, defendant, through counsel, asked for a Rule 402 conference and represented that defendant wanted "to see what the Court's position might be." He now complains that the trial court informed him of its position. After defendant had the benefit of seeing the majority of the State's case against him, defendant asked the trial court to enter a judgment based on the offer apparently derived from the prior Rule 402 conference. Defendant now complains that the court erred by granting his request and entering judgment based on that offer. This is the sort of duplicitous conduct which the invited error doctrine is intended to prevent. The trial court's actions regarding the guilty plea were done each time at defendant's invitation, and thus, we find his contention that the court induced him to plead guilty to be entirely disingenuous.

Invited error aside, defendant asserts the error here rendered the judgment void. Because a void judgment can be attacked at any time (People v. Jardon, 393 Ill. App. 3d 725, 739 (2009)), we consider defendant's assertion. A judgment is void, rather than merely voidable, only where the court entering the judgment lacked jurisdiction over the parties, over the subject matter, or exceeded its statutory authority to act. People v. Raczkowski, 359 Ill. App. 3d 494, 496-97 (2005). Once a court has obtained jurisdiction, it will not lose jurisdiction due to a mistake of the law, the facts or both. People v. Ramirez, 361 Ill. App. 3d 450, 454 (2005). Even an error of constitutional magnitude does not automatically divest the court of jurisdiction or render a judgment void. See Raczkowski, 359 Ill. App. 3d at 498-500.

Here, the parties do not dispute that the trial court had subject matter jurisdiction,

personal jurisdiction or the power to sentence defendant to his original 32-year sentence or his ultimate 29-year sentence (730 ILCS 5/5-8-1(a)(1) (West 2000)) for first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)). In addition, this court has previously held that a violation of Rule 402, a procedural rule, does not defeat the trial court's jurisdiction to enter convictions based on a defendant's pleas and such a violation, even if constitutional in dimension, renders a conviction merely voidable. People v. Speed, 318 Ill. App. 3d 910, 916-17 (2001). We also find that a violation of Rule 402 based on the court's allegedly improper involvement in the plea agreement did not oust the court's jurisdiction or render the judgment void.

We acknowledge that prior case law has referred to a guilty plea as "void" where entered involuntarily and in violation of due process. People v. Williams, 188 Ill. 2d 365, 370 (1999). Nonetheless, in light of case law holding that voidness is a question of jurisdiction, which a constitutional error will not alone defeat, we do not believe a "void" guilty plea in the aforementioned context carries the same meaning as a void judgment which is subject to attack at any time. See People v. Davis, 156 Ill. 2d 149, 155 (1993) (the term "void" has been used interchangeably with the term "voidable" so that when used in an opinion, "void" must be considered in context to determine its precise meaning); see also People v. Santana, 401 Ill. App. 3d 663, 665-66 (2010) (the failure to provide appropriate MSR admonishments before a guilty plea is entered does not render the judgment void). Even assuming the involuntary nature of a guilty plea could render the entire judgment void, defendant has not shown that his guilty plea was involuntary based on his mistaken belief that the court properly negotiated a plea agreement with him. This is because the record before us does not unequivocally show that the plea agreement

1-08-0758

here was improperly negotiated with the trial court, rather than the State.

Supreme Court Rule 402 prohibits the trial judge from initiating plea negotiations but contemplates the trial judge's limited participation in negotiations. 177 Ill. 2d R. 402(d); People v. Fox, 38 Ill. App. 3d 257, 260 (1975). The rationale is to avoid coercive guilty pleas and to assist the trial court in maintaining a neutral stance. People v. Darnell, 190 Ill. App. 3d 587, 590 (1989). Whether a judge's action renders a plea involuntary must be determined on a case by case basis. See People v. Johnson, 152 Ill. App. 3d 559, 563 (1987). To show that the trial court's participation in negotiations rendered the guilty plea involuntary, a defendant must present facts which reasonably demonstrate that the court departed from its judicial function and participated in the negotiation process to the extent that improper influence was exerted upon the defendant to plead guilty, or that the defendant reasonably believes he is no longer able to receive an impartial trial so that he must enter a guilty plea and accept the sentence approved by the trial court. People v. Nickols, 41 Ill. App. 3d 974, 978 (1976). Here, defendant has abjectly failed to demonstrate even a wisp of evidence of improper conduct by the trial court. Furthermore, Supreme Court Rules 604 and 605 define a negotiated guilty plea as "one in which the prosecution has bound itself to recommend a specific sentence, or a specific range of sentence, or where the prosecution has made concessions relating to the sentence to be imposed and not merely to the charge or charges then pending." 210 Ill. 2d Rs. 604(d), 605(b), (c). Plea agreements occur between parties, rather than the trial judge and the defendant. People v. Meza, 376 Ill. App. 3d 787, 790 (2007). Where a plea agreement prevents the State from seeking a sentence from the full range of available penalties, the plea is negotiated, not open. People v.

15

1-08-0758

Gougisha, 347 Ill. App. 3d 158, 161 (2004).

To the extent that the parties have attempted to concede the fact that defendant did not enter a "negotiated guilty plea" with the State, this is a legal term of art. In addition, neither attorney on appeal participated in the proceedings below and do not appear to base their positions on personal knowledge of the facts. Even if they did, matters outside the record are not appropriate for our review on direct appeal. See People v. Manning, 334 Ill. App. 3d 882, 893-94 (2002). Because the error asserted by defendant rests on the premise that he pled guilty based on an agreement negotiated with the trial court rather than the State, he must show that the record supports his premise. The record of guilty plea proceedings created by the parties in the trial court in this case is far from a model of clarity. Still, it is plain that defendant pled guilty in exchange for the unequivocal promise of a 32-year prison term, a figure initially derived from a Rule 402 conference in which the State participated, and the record does not overtly establish that the figure of 32 years was suggested by, rather than merely agreed to by, the trial court. Accordingly, we find defendant entered a negotiated guilty plea based on an agreement with the State.

Here, defense counsel told the trial court that there had been "informal talks" with the State regarding "maybe resolving this matter" and sought a Rule 402 conference. Thus, we find the suggestion that the State had no involvement in negotiations to be disingenuous. We also reject the suggestion that the quoted language clearly shows no tentative agreement between the parties had been reached. Following the conference, which was held off the record, defendant declined to plead guilty. After the State had presented most of its case however, defendant asked

16

the trial court to reinstate the offer of 32 years, an offer which the parties do not dispute resulted from the Rule 402 conference. During the discussions that ensued, defense counsel referred Judge Egan to "the offer you have made" and Judge Egan similarly said he would reinstate "the offer I made before trial." The parties make too much of this language. At most this shows that defense counsel and the State had discussed a tentative agreement for a 32-year sentence and the court offered to consent to that agreement, not that the court first proposed a 32-year sentence while the State remained silent. We cannot agree that this language unequivocally shows it was the trial court which first suggested a 32-year sentence. In contrast, the promise that defendant would receive a 32-year sentence if he pled guilty was unequivocal. *Cf.* Meza, 376 Ill. App. 3d at 788-90 (where, following a Rule 402 conference, the trial court conditionally offered to sentence the defendant to 15 years in prison, the parties agreed on the record that defendant was entering a "blind plea" and defendant acknowledged on the record that there was no agreement between the State and himself, the trial court's statement regarding the 15-year sentence was merely a statement of the sentence the judge would be inclined to give defendant, not a plea agreement). Notably, at no point did the State object to the 32-year sentence. The State listed defendant's prior convictions but did not argue that a different sentence was more appropriate. If the full range of sentences was still available to the State, this record does not reflect that. The record strongly suggests that the State made a concession relating to defendant's sentence at the Rule 402 conference.

The comments made by the parties and the trial court at the hearing on defendant's motion to withdraw the guilty plea do not change the result. We note that APD Koster, who represented

defendant at the hearing on his motion but did not represent him at the Rule 402 conference, did not have firsthand knowledge of what ensued at the prior conference. At that hearing, the State argued that there had not been a "*traditional* negotiated plea between the state and the defendant" (emphasis added). The State then explained that on the fourth day of trial, defendant asked to reinstate "the same offer that was made to him at the Rule 402 conference by your Honor." This statement does not clearly show there was never an agreement formed between the State and Hicks, defendant's former counsel, to which the trial court offered its consent. At best, this shows the State believed the negotiated plea was not traditional because it occurred well after the trial had commenced when the defendant asked the court to reinstate the prior offer. To the extent that the State was attempting to distance itself from its role in procuring defendant's guilty plea on the basis that the State had already presented its case when defendant asked that an offer based on the parties' agreement be reinstated, this attempt fails. Where the State is aware that a defendant is pleading guilty based on a sentence derived from a tentative agreement previously formed between the parties and, despite this knowledge, the State does not retract its part in the agreement, we do not believe the State can later deny that it was a party to the agreement due to the passage in time. For the same reason, we find the trial court was incorrect to the extent it suggested the plea was not negotiated with the State because it was defendant who asked to reinstate the prior offer derived from the parties' Rule 402 conference.

The State contends we must presume defendant entered an open guilty plea because he received postplea admonishments which apply to an open plea. Specifically, defendant was admonished that he could file a motion to reconsider his sentence, an admonishment that does not

apply to a negotiated guilty plea. Compare 210 Ill. 2d R. 605(b)(2), with 210 Ill. 2d R. 605(c)(2). While this may be one factor to consider in assessing the nature of the plea, any inference to be made from the court's use of law applying to open guilty pleas was negated by the court's use of law applying to negotiated guilty pleas when the court reduced defendant's sentence for the lack of MSR admonishment.

Although defendant's MSR claim will be discussed later in further detail, where a defendant enters an open guilty plea but is not admonished of his MSR term, due process is satisfied so long as the sentence plus the MSR term is less than the maximum he was told he could receive. See People v. Whitfield, 217 Ill. 2d 177, 193 (2005). In contrast, where the defendant pleads guilty in exchange for a specific sentence pursuant to a negotiated plea agreement and the court fails to admonish the defendant that a MSR term will be added to his sentence, the plea agreement has been breached and due process violated. Whitfield, 217 Ill. 2d at 195. There is no dispute that defendant's original 32-year sentence plus a 3-year MSR term is well below the maximum sentence defendant was told he could receive. Thus, defendant would not have been entitled to relief for the lack of MSR admonishment unless he had entered a negotiated guilty plea for a specific sentence. We further note that at this hearing, the State suggested that defendant's sentenced be reduced to give him the benefit of his bargain, thereby acknowledging that a bargain did in fact exist. The trial court's decision to grant defendant relief indicates that the plea was negotiated, rather than open. Because the court applied law relevant to both open and negotiated pleas, we do not find either application of law to be dispositive.

In two cases with similar fact patterns, the First District of this court has found that the

defendant's guilty plea resulted from a plea agreement negotiated with the State. In People v. Dunn, 342 Ill. App. 3d 872 (2003), a negotiated guilty plea was found where the parties participated in a pretrial conference with the trial court, the defendant on a later date indicated he wished to plead guilty to the terms discussed at the prior conference, and the trial judge acknowledged stating on a prior occasion that "if you plead guilty, I would sentence you to 20 years in the Illinois, Department of Corrections." Dunn, 342 Ill. App. 3d at 875, 879-80. In Gougisha, a negotiated guilty plea was found where a Rule 402 conference took place, the trial judge referred to "my offer" to sentence the defendant to 12 years in prison, and defense counsel stated the defendant was pleading guilty in exchange for a 12-year prison term "as a result of the [Rule] 402 conference." Gougisha, 347 Ill. App. 3d at 159-62. Similarly, here, the specific sentence defendant pled guilty to was derived from a Rule 402 conference in which the State participated and the trial judge's reference to his offer does not show that he, rather than the parties, initially suggested a 32-year sentence.

In a more recent case, the Second District disagreed with Dunn and Gougisha to the extent those cases indicate that a plea is negotiated when the trial court makes a sentencing offer on its own initiative and the State acquiesces. People v. Garibay, 366 Ill. App. 3d 1103, 1107 (2006). We disagree with the Garibay court's reading of those two cases. At most, those cases indicate that a trial judge's reference to his sentencing offer does not mean that the offer was initiated by, rather than agreed to by, the court. Nonetheless, the facts of Garibay are distinguishable from the present case. There, the reviewing court found the defendant entered an open guilty plea where the record apparently showed that during plea negotiations the court itself

20

volunteered that defendant would receive a prison term between 14 and 18 years in prison, the parties agreed only that the defendant would plead guilty to a reduced charge, and defense counsel subsequently referred to the defendant's plea as open. Garibay, 366 Ill. App. 3d at 1105-08. In contrast, our record does not unequivocally show that it was the trial court that initially suggested an agreement for a 32-year sentence or that the parties had entered into a different agreement.

We also acknowledge that the reviewing court in Garibay stated that where an ambiguity exists regarding whether the parties entered into an agreement relating to the defendant's sentence, "the plea agreement should not be construed as negotiated." Garibay, 366 Ill. App. 3d at 1108. Nonetheless, it remains defendant's burden to show his entitlement to withdraw his guilty plea. Defendant's claim for relief here depends on demonstrating that he pled guilty based on a guilty plea that was improperly negotiated with the trial court, we find that he has manifestly failed to establish any facts to support this assertion.

Finally, we note that even if the suggestion of 32 years did originate with the trial court, the rationale behind limiting the trial court's participation in plea negotiations is not implicated here. The challenged conduct of the trial court occurred specifically at defendant's request, so the court clearly did not coerce the plea and nothing in the record indicates that complying with defendant's request obstructed the court's neutral stance under these circumstances. Here, defendant's purpose is transparent. He wishes to escape his plea bargain promise, discard his guilty plea and start the criminal process anew. See People v. Summers, 291 Ill. App. 3d 656, 657 (1997). Defendant himself has attacked his guilty plea and then argued in a circular fashion

that his plea was involuntary because it was subject to attack. Defendant successfully obtained a punishment that originally suited him and following the reduction of his sentence, he received exactly what he asked for, even if he now regrets having to serve his punishment. See Summers, 291 Ill. App. 3d at 661. We find no injustice here.

Having determined that defendant entered a negotiated guilty plea, we consider his final assertion that the trial court erred by not granting him the relief of his choosing based on the court's failure to admonish him regarding his MSR term. Specifically, he asserts the trial court should have permitted him to withdraw his guilty plea, rather than reduce his sentence by three years.

In Whitfield, our supreme court held that where the defendant pleads guilty in exchange for a specific sentence pursuant to a negotiated plea agreement and the court fails to admonish the defendant before accepting his plea that a MSR term would be added to that sentence, the sentence imposed is more onerous than that agreed to by the defendant, in breach of the plea agreement and in violation of due process. Whitfield, 217 Ill. 2d at 195. The court found that two remedies exist when the defendant has not received the benefit of his bargain: (1) the promise must be fulfilled, or (2) the defendant must be allowed to withdraw his guilty plea. Whitfield, 217 Ill. 2d at 195, 202. Because the MSR term was mandatory under state law (see 730 ILCS 5/5-8-1(d)(1) (West 1998)) and the promised sentence could not be fulfilled as a result, the defendant in Whitfield suggested that his sentence be reduced by the length of that MSR term to approximate the parties' bargain. Whitfield, 217 Ill. 2d at 202-03. The court, acknowledging case law finding that a defendant's preference in remedy should be accorded considerable if not controlling weight,

22

found the relief sought by the defendant to be the appropriate remedy and reduced his sentence. Whitfield, 217 Ill. 2d at 203-05. Following Whitfield, this court has examined the record to determine whether permitting the defendant to withdraw his guilty plea based on the lack of a MSR admonishment would be unduly prejudicial to the prosecution. People v. Chamness, 373 Ill. App. 3d 492, 495 (2007).

Here, it is undisputed that defendant was not admonished regarding the three-year MSR term which applies to his sentence (730 ILCS 5/5-8-1 (West 2000)). Defendant contends he is entitled to his remedy of choice, *i.e.* the opportunity to withdraw his guilty plea. Nonetheless, the trial court's findings before reducing defendant's sentence and the record show that retrial would unduly prejudice the prosecution. *Cf.* Chamness, 373 Ill. App. 3d at 495 (where the record was insufficient to determine whether retrial would prejudice the State, the reviewing court remanded for the trial court to make the determination). In deciding not to allow defendant to withdraw his guilty plea, the court indicated that if defendant had pled guilty before trial began, the court would have allowed defendant to withdraw his guilty plea. The court observed however, that the State had already presented witnesses in support of its case when defendant requested that the original offer be reinstated. In addition, the court acknowledged defendant's argument that the court's reinstatement of the original plea offer was irrelevant, but found that the parties and the court had been ready to proceed.

We disagree with defendant's suggestion that despite the State's expenditure of the resources necessary to present a significant portion of its case, allowing defendant to withdraw his guilty plea would not prejudice the State. Defendant contends that notwithstanding the passage

of 10 years since the victim's death, the State is not prejudiced because the witnesses or a transcript of their prior testimony is available for use at trial. Even assuming such evidence is available, either form of evidence would be a poor substitute for live testimony presented by witnesses with fresh memories. In addition, we note that defendant has twice changed his mind regarding whether he preferred to plead guilty or proceed to trial and there is little guarantee that he will not change his mind a third time. Even affording defendant's preference considerable weight, the trial court did not err under these circumstances in finding that reducing defendant's sentence was more appropriate than permitting defendant to withdraw his guilty plea and start anew. Defendant has received the bargain of his benefit and can claim no prejudice.

For the foregoing reasons, we affirm the judgment.

Affirmed.

GALLAGHER, P.J., and O'BRIEN, J., concur.

1-08-0758

## REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please Use Following Form: | |
| Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS, )<br><br>Plaintiff-Appellee, )<br><br>v. )<br><br>ROBERT SMITH, )<br><br>Defendant-Appellant. ) |

| | |
|---|---|
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-08-0758<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>December 23, 2010<br>(Give month, day and year) |

| | |
|---|---|
| JUSTICES | JUSTICE LAVIN delivered the opinion of the court:<br><br>GALLAGHER, P.J. and O'BRIEN, J,                    concur |

| | |
|---|---|
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorable        James D. Egan, Judge Presiding. |

| | |
|---|---|
| | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Attorneys for **Plaintiff/Appellee**:<br>People<br><br><br><br>Attorneys for **Defendant/Appellant**:<br>Robert Smith<br><br>. | Anita Alvarez, State'e Attorney<br>Alan Spellberg, Mary Needham, Stacia Weber, ASA's<br>Room 309 Daley Center<br>Chicago, IL 60602<br><br>Michael Pelletier, State Appellate Defender<br>Patricia Unsinn, Deputy Defender<br>Michael G. Soukup, Assistant Appellate Defender<br>203 N. LaSalle St., 24th floor<br>Chicago, Illinois 60601<br>312.814.5472 |