2021 IL App (1st) 192203-U

No. 1-19-2203

Order filed July 21, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 03684 |
| | ) | |
| KENYATTA MCLAURIN, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for armed habitual criminal is affirmed over his contention the evidence was insufficient to establish his constructive possession of a firearm.

¶ 2    Following a bench trial, defendant Kenyatta McLaurin was found guilty of armed habitual criminal and sentenced to 12 years' imprisonment. On appeal, he contends his conviction should be reversed where the evidence was insufficient to establish his constructive possession of a firearm. We affirm.

¶ 3     Defendant was charged with one count of armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)), which alleged he knowingly or intentionally possessed a firearm after having been convicted of aggravated unlawful use of a weapon and aggravated battery with a firearm. Three counts of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)), alleged he possessed a firearm and ammunition in his own abode after having been convicted of possession of a controlled substance. One count of violation of the Firearm Owner's Identification Card Act (FOID) (430 ILCS 65/2(a)(1), 14(c)(3) (West 2018)), alleged defendant possessed a firearm without a valid FOID card.[1]

¶ 4     Chicago police Detective Vaci testified he and a team of officers executed a search warrant at an apartment on the 1200 block of North Taylor Avenue in Oak Park at approximately 7:00 a.m. on February 12, 2018. Vaci and his team went to the second-floor apartment, knocked, and announced their presence. No one answered, so the officers forced the apartment door open. Upon entry, Vaci saw a kitchen to the right, a "sitting area and a bathroom" to the left and, directly ahead, "a couch in like a little living room and then a bedroom to the direct right of that." The apartment had one bedroom.

¶ 5     Darius Hammond was inside the apartment when Vaci entered; he was not the target of the warrant. The officers detained him.

¶ 6     The bedroom door was locked with an electronic keypad, which Vaci identified in a photograph of the bedroom.[2] The officers knocked on the bedroom door; no one responded, so the officers forced entry to the bedroom and searched it. In the bedroom, Vaci found an "[electric]

---

[1] The State nol-prossed one count of possession of cannabis with intent to deliver.
[2] None of the exhibits the parties entered into evidence are part of the record on appeal.

utility bill, a birth certificate with [defendant's] name as well as a family picture with [defendant] in it." Vaci initially testified he found "proof of residency" in a drawer of a dresser in the bedroom, then testified he found "proof of residency" "on or in the dresser." He also found a loaded Taurus 9-millimeter semiautomatic handgun in the top left dresser drawer, ammunition in the top right dresser drawer, and a box of ammunition in the closet. Vaci found one bundle of cash in a safe in the closet and a second bundle of cash in a dresser drawer. He also found cannabis in a vacuum-sealed bag next to the dresser. Vaci inventoried the items he found in the bedroom.

¶ 7    In court, Vaci identified the following items he recovered from the bedroom and inventoried: (1) two electric bills with defendant's name and the address of the Taylor apartment, (2) defendant's birth certificate, (3) "a picture on the mirror that was attached to the dresser of [defendant] and his family," and (4) a social security card with Hammond's name.[3] Vaci identified defendant in the family photograph and in court. Vaci also identified photographs of the firearm "that was in the drawer," ammunition "in a plastic bag as well as loose rounds in the drawer," "the box of ammunition recovered from the closet," the safe, and the cash. The State moved these items and photographs into evidence.

¶ 8    On cross-examination, Vaci testified defendant was not present during the execution of the search warrant and "was not taken into custody at any time during or near the execution of the search warrant."

¶ 9    Vaci did not see who put the firearm or ammunition in the bedroom and did not know how long the firearm and ammunition had been there. He did not submit the firearm or ammunition for

---

[3] The record is unclear as to whether Vaci found and inventoried one electric bill or two. Vaci referred to two electric bills when reviewing the items he inventoried but, otherwise, the record and the parties' briefs refer to one electric bill.

fingerprint or DNA testing. The electric bill was issued on August 2, 2017, approximately six months before the execution of the search warrant. The photograph of defendant and his family was not dated. Vaci did not know who placed the photograph in the bedroom and did not know how long it had been there. He did not know who placed defendant's birth certificate in the bedroom.

¶ 10     Vaci searched Hammond after he was taken into custody and recovered a set of keys to the Taylor apartment from Hammond's pants pocket, which he inventoried. Vaci was unable to determine who the lessee of the apartment was.

¶ 11     Upon questioning by the court, Vaci testified the keys in Hammond's pocket were not to the locked bedroom and Hammond "did not have access to the bedroom that was locked." The digital keypad that locked the bedroom door could be opened with "a 4, 6 digit code." There was no need to use a key to unlock the bedroom door.

¶ 12     The State moved into evidence certified copies of defendant's prior convictions for aggravated battery and aggravated unlawful use of a weapon by a felon.

¶ 13     Defendant moved for a judgment of acquittal, arguing the State failed to prove his actual or constructive possession of the firearm. The court denied defendant's motion.

¶ 14     Tiffany McLaurin testified defendant, whom she identified in court, is her brother. Defendant had lived with her on the 1300 block of North Central Avenue in Chicago continuously for 15 years and received mail at that address.

¶ 15     McLaurin identified a letter from the State's Attorney's office addressed to defendant at their home on the 1300 block of North Central. The letter was a "notification for [defendant] to appear in court for this case." McLaurin also identified a gas bill addressed to defendant at their

home on the 1300 block of North Central, which was dated October 26, 2018. Defendant moved these documents into evidence; however, the court only admitted the letter from the State's Attorney's office to "show that [the State's Attorney] sent a letter to that address because maybe she thought [defendant] lived there on a certain date."

¶ 16    In closing, defendant argued the evidence established he lived on North Central in Chicago with his sister, not at the Taylor apartment in Oak Park, and Hammond's social security card supported an inference he had access to the bedroom of the Taylor apartment. Defendant noted the State introduced no evidence he knew the combination to the keypad securing the bedroom. The State contended the evidence established defendant and Hammond's "joint constructive possession" of the items in the bedroom. The State theorized defendant stored his firearm at the Taylor apartment because he wanted to keep it in a safe place away from his family.

¶ 17    The court found defendant guilty of the armed habitual criminal count and acquitted him of all the other counts. In announcing its ruling, the court reasoned defendant storing "things that are important to him in that bedroom, like the birth certificate, like the picture of him and arguably his family as well," implied he possessed the firearm in the bedroom because people tend to keep such important belongings at their homes. The court concluded the evidence showed "at least that [defendant] had two places, one with his sister and the other on Taylor Street in Oak Park."

¶ 18    Defendant filed a posttrial "motion to set aside the finding of guilt." Defendant's written motion is not in the record on appeal. However, at the hearing on this motion, the court described it as "comprised of the following numbered paragraphs, 15." Defendant orally argued "the evidence did not establish beyond a reasonable doubt that [he] possessed this weapon." The court denied defendant's motion.

¶ 19    The court sentenced defendant to 12 years' imprisonment.

¶ 20    On appeal, defendant challenges his conviction for armed habitual criminal. Specifically, he contends the State failed to prove he constructively possessed the firearm Detective Vaci found in the bedroom dresser.

¶ 21    In assessing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ward*, 215 Ill. 2d 317, 322 (2005). We do not retry the defendant. *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 58. In a bench trial, the court is responsible for evaluating the credibility of the witnesses, resolving conflicts in the evidence, and determining the weight to be given to and the inferences to be drawn from the evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We cannot substitute our judgment for that of the trier of fact. *People v. Sutherland*, 223 Ill.2d 187, 242 (2006). We will only reverse a defendant's conviction if the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to his guilt. *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 22    To prove defendant guilty of armed habitual criminal as charged, the State had to establish he knowingly possessed a firearm when he had previously been convicted two or more times of certain enumerated felonies. See 720 ILCS 5/24-1.7(a) (West 2018). Defendant does not dispute the State established his qualifying convictions. He only contests the evidence supporting his possession of a firearm.

¶ 23    A defendant's possession of contraband is a factual issue, and we will not disturb the findings of the trial court unless the evidence is so unbelievable that it creates a reasonable doubt as to the defendant's guilt. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27. Possession of a firearm

can be actual or constructive. *Id.* Here, there is no dispute defendant did not actually possess the firearm on his person. Thus, the State had to prove defendant constructively possessed it. See *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 28.

¶ 24     To establish constructive possession, the State must prove the defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the area where the firearm was found.[4] *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession is typically proved entirely through circumstantial evidence. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 26. Control is established by showing the defendant's intent and capability to exercise dominion over the area where contraband was found. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. Proof the defendant inhabits the premises is sufficient to establish control for purposes of constructive possession. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. The fact that others also have access to the location does not diminish the defendant's constructive possession. *Jackson*, 2019 IL App (1st) 161745, ¶ 27.

¶ 25     A defendant's knowledge of contraband may be inferred where it is found in an area under his control. *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 29. Because knowledge may be inferred from control, but control may not be inferred from knowledge (*Id.*), we analyze the State's proof of control first.

¶ 26     Viewed in the light most favorable to the State, the evidence was sufficient for the trial court to conclude defendant controlled the bedroom in which Vaci found the firearm. Three pieces of evidence connected defendant to the bedroom: the electric bill in his name at the Taylor Avenue

---

[4] The term "exclusive" tends to be misleading in this context, as it is well-settled that more than one person may share control over an object or area. *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 31 n. 3.

address, his birth certificate, and his family photograph. The electric bill supported an inference defendant lived at the Taylor apartment or stayed there some of the time. See *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993) (utility bills show the defendant lived on the premises and, therefore, controlled them). If defendant lived in or stayed at the Taylor apartment, it would be reasonable to infer he controlled and used its only bedroom and the furniture therein.

¶ 27    The other items Vaci found in the bedroom further supported a conclusion defendant had access to and used the bedroom. Defendant's birth certificate and family photograph were personal items, and his birth certificate was unique to him. Vaci found those items on or in the dresser in which he found the firearm. This evidence supported a conclusion defendant used the dresser to store his personal belongings.

¶ 28    Moreover, the bedroom in which defendant stored his personal belongings was secured with not just an ordinary lock, but a digital keypad lock. Vaci testified Hammond did not have access to the bedroom. Thus, the evidence supported a conclusion defendant stored his personal belongings in a room with specially restricted access. Altogether, the evidence supported a rational inference defendant had access to the bedroom of the Taylor apartment and, at a minimum, used it to store his belongings. Thus, the court reasonably concluded defendant controlled that bedroom.

¶ 29    Because the State established defendant controlled the bedroom, the trial court could properly infer defendant knew the firearm was in that bedroom and, specifically, in the dresser where his other personal items were found. See *Bogan*, 2017 IL App (3d) 150156, ¶ 29. Thus, the State established defendant constructively possessed the firearm in the dresser.

¶ 30    Defendant argues there was "uncontroverted evidence [he] lived elsewhere," citing his sister's testimony and the letter the State's Attorney's office sent to the North Central address.

Even accepting that defendant's primary address was on North Central in Chicago, that does not negate his control over the bedroom of the Taylor apartment in Oak Park. One person can have control over multiple properties. See, e.g., *People v. Bond*, 205 Ill. App. 3d 515, 517 (1990) (defendant had control over apartment that was no one's residence and that was used to package and sell cocaine).

¶ 31    Defendant also contends there was no evidence he knew the firearm was in the dresser. As explained above, the trial court properly inferred defendant's knowledge of the firearm from his control over the dresser where it was found. See *Bogan*, 2017 IL App (3d) 150156, ¶ 29.  With respect to this argument, both parties overstate Vaci's testimony regarding where he found defendant's personal items. The State insists Vaci found the birth certificate and electric bill "*inside* the *same* dresser drawer" as the firearm (Emphasis in original.). Defendant claims Vaci found those items "in the open." In fact, Vaci testified he found defendant's personal items in *or* on the dresser. Regardless, defendant's personal items were in the same locked bedroom, in or on the same dresser as the firearm. To the extent their location in versus on the dresser is material, the trial court was responsible for resolving this somewhat unclear testimony and we will not disturb its conclusion. See *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 32    We note that Vaci identified several photographs he took of the bedroom and items recovered therein. These photographs are not included in the record on appeal, nor are the physical exhibits Vaci identified. As the appellant, defendant bears the burden of providing a sufficiently complete record to support his claim of error. *People v. Smith*, 406 Ill. App. 3d 879, 886 (2010). We construe any doubt arising from the incompleteness of the record against defendant. *Id.* The photographs of the bedroom and recovered items might, for example, clarify whether defendant's

birth certificate and electric bill were in or on the dresser, and how close to the firearm they were. But we are unable to review this photographic evidence, so we can only resolve the lack of clarity as to these items' locations against defendant. See *Id.* Moreover, the trial court saw the photographs and recovered items, and we presume the trial court's ruling had a sufficient factual basis. See *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 34 (not yet released for publication and subject to revision or withdrawal) ("absent a complete record, it is presumed the trial court's judgment conforms to the law and has a sufficient factual basis").

¶ 33 Defendant next argues the evidence supported a conclusion Hammond had access to the bedroom and possessed the firearm and cannabis inside it. There was conflicting evidence as to whether Hammond had access to the bedroom; Vaci testified he did not, but also testified Hammond's social security card was in the bedroom. This conflicting evidence was for the trial court to resolve. See *Siguenza-Brito*, 235 Ill. 2d at 228. In any event, even if Hammond had access to the bedroom, that would not exonerate defendant; it would make defendant and Hammond's possession of the firearm joint. See *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009) (the " 'dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband' "; " 'the result is not vindication of the defendant, but rather a situation of joint possession.' ") (quoting *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992)).

¶ 34 The cases defendant cites are distinguishable and do not require reversal of his conviction. See, e.g., *People v. Wise*, 2021 IL 125392, ¶ 1 (no constructive possession where firearm was found near passengers in the third row of a minivan the defendant was driving); *People v. Terrell* 2017 IL App (1st) 142726, ¶¶ 19-25 (no constructive possession where no utility bills connected defendant to the apartment where contraband was found, a different individual was the lessee, and

none of defendant's property was in the same room as the contraband). *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 28 (no constructive possession where a retail delivery receipt and two unopened mass mail solicitations were the only evidence connecting the defendant to the apartment where contraband was found); *People v. Alicea*, 2013 IL App (1st) 112602, ¶¶ 13-15 (no constructive possession where multiple witnesses testified defendant did not live in the apartment where contraband was found and that he had moved out permanently). Accordingly, the evidence sufficiently supported defendant's conviction for armed habitual criminal.

¶ 35    Finally, footnotes in defendant's brief challenge the trial court's exclusion of testimony there were dogs in the Taylor apartment and of the letter the State's Attorney's office sent to defendant at the North Central address.[5] To preserve these evidentiary issues for appellate review, defendant was required to make contemporaneous objections and raise the issues in a posttrial motion. See *People v. Woods*, 214 Ill. 2d 455, 470 (2005). Defendant's posttrial motion is not in the record on appeal. The transcript of the hearing on that motion reflects defendant did not raise, and the court did not address, any issues other than the State's proof of constructive possession. Thus, the record before us does not establish defendant properly preserved these issues, and defendant does not seek plain error review. Accordingly, defendant has forfeited any challenge to these evidentiary issues. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010).

¶ 36    For the foregoing reasons, we affirm defendant's conviction.

¶ 37    Affirmed.

---

[5] The court did not exclude this letter. As noted above, it admitted the letter for the limited purpose of establishing where the State's Attorney's office believed defendant lived at the time that letter was mailed.