2021 IL App (1st) 170597

FIRST DISTRICT
THIRD DIVISION
March 31, 2021

No. 1-17-0597

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 97 CR 9609 (02) |
| | ) | |
| DeSHAWN COLLINS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Arthur F. Hill, Jr., |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Burke concurred in the judgment and opinion.

## OPINION

¶ 1    In 1998, defendant DeShawn Collins was convicted of first degree murder and home invasion and sentenced to concurrent prison terms of 60 and 30 years. In 2009, the trial court summarily dismissed defendant's *pro se* postconviction petition at the first stage. This court reversed the dismissal on appeal, finding that defendant's petition had set forth an "arguably meritorious" claim of actual innocence, and remanded for second stage proceedings. *People v. Collins*, 2012 IL App (1st) 092138-U. At the second stage, the State moved to dismiss defendant's postconviction petition, which the trial court granted.

¶ 2    Defendant now appeals the trial court's second stage dismissal of his postconviction petition, arguing that (1) postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), (2) his petition made a substantial showing of actual innocence, and (3) he set forth a substantial showing of ineffective assistance of trial and direct appeal counsel for not challenging a discovery violation by the State.

¶ 3 In April 1997, defendant was charged with first degree murder, home invasion, and attempted armed robbery with codefendants Stanford Reed and Walter Blackman for the March 5, 1997, shooting death of Walter McCullins. At the 1998 trial, all three codefendants were tried jointly with defendant and Reed having separate juries and Blackman with a bench trial. The following evidence was admitted at trial.

¶ 4 Chicago Housing Authority Officer Laurie Sabatini testified that on March 5, 1997, she and her partner were conducting narcotics surveillance from the second-floor window of a building located at East 132nd Street and South Langley Avenue in Chicago. At approximately 11 a.m., Officer Sabatini observed a charcoal-colored car traveling northbound on Langley Avenue. The car pulled into a parking lot facing east. She observed four males exit the vehicle and run to the rear of the building located at 132nd Street and Langley Avenue. She then heard "rapid gunfire." She estimated that she heard 10 to 12 gunshots. Then the same four men ran back to the vehicle, but one of the men was "struggling" and his right leg was injured. She was able to see the face of one of the men and identified him in court as codefendant Blackman. The men then drove southbound on Langley Avenue.

¶ 5 Officer Sabatini notified her partner and they exited the apartment. They went to the rear of the building located at 132nd Street and Langley Avenue. They observed a man named Keith Johnson in the doorway of an apartment and he was distraught. Officer Sabatini entered the apartment and observed a man, later identified as Walter McCullins, laying on the kitchen floor, approximately two to three feet from the door. The man had visible gunshot wounds, and she believed he was deceased. She and her partner protected the crime scene and recovered cannabis, money, and bullet casings. The officers notified the medical examiner, Area 2 violent crimes, and their supervisor. Chicago police officers arrived on the scene. Officer Sabatini later

identified codefendant Blackman in a lineup at the police station as the one of the offenders.

¶ 6     Forensic evidence was presented showing bullet holes in the kitchen and living room of McCullins's apartment. Thirteen shell casings, consisting of one .38-caliber, five .45-caliber, and seven 9-millimeter, were found at the scene. The medical examiner also recovered two .45-caliber bullets from McCullins's body. Forensic testing found that all the 9-millimeter casings came from one gun and all the .45-caliber casings and bullets came from a single gun. The autopsy disclosed that McCullins died as a result of six gunshot wounds.

¶ 7     Detective Thomas Ayers of the Chicago Police Department testified that he observed the shell casings from a 9-millimeter and .45-caliber firearms at the scene. Later the same day at the Area 2 police station, he observed two detectives with codefendant Reed. Reed had been taken into custody at the hospital after he sought treatment for a gunshot injury to his leg and a subsequent test revealed that gunshot residue was found on his left hand. Based on statements from Reed, the police investigation continued, and the police were looking for other suspects involved in McCullins's murder.

¶ 8     Chicago Detective Edmund Leracz testified that he placed defendant under arrest the morning of March 7, 1997, and had defendant transported to the Area 2 police station. Detective Leracz requested an assistant State's Attorney (ASA) from the felony review unit to come to the station. ASA Sandra Blake came to the station and interviewed defendant. She had also been involved in the investigation the previous evening and into the early morning hours of March 7, 1997. The initial interview lasted approximately 30 minutes. When the interview resumed, ASA Blake showed Reed's statement to defendant and allowed him to read it. After he read the statement, defendant spoke with her, and later he agreed to provide a statement that was

handwritten by ASA Blake. ASA Blake read defendant's seven-page statement into the record. In his statement, defendant detailed his participation in the crime as follows.

¶ 9    On March 5, 1997, at about 11:00 a.m., defendant was walking on South Greenwood Avenue in Chicago to go to the store. As he was walking down the street a gray Bonneville pulled up to him, and he got in the rear passenger seat. He knew the gray Bonneville to belong to Walter Blackman, who was driving the car, and Enis Reed was in the passenger seat. He has known Blackman for five years and knows Blackman uses the nicknames "Gangster, Bukum and B-5." Defendant has known Enis Reed for all of his life and knows Enis Reed uses the alias Stanford Reed.

¶ 10    When he got in the car, Reed told defendant that he had been robbed of about four hundred dollars that he had won in a dice game. Reed told him that two guys named Johnny McCoy and Jamie robbed him. Defendant knew McCoy and Jamie from the neighborhood. Reed told him that McCoy and Jamie were at Walter McCullins's "crib." He also knew McCullins from the neighborhood and from school. Reed told him that he and Blackman were going over to McCullins's house to get the money back, and defendant agreed to go with them. When they drove up to the block where McCullins lived, at 13215 South Langley Avenue, they met up with another friend of theirs named "Two Tec." Defendant knew "Two Tec" from the neighborhood but that he did not know "Two Tec's" real name. Blackman told "Two Tec" what they were going to do and that "Two Tec" agreed to join them.

¶ 11    When they went to McCullins's house, defendant was armed with a .380 automatic handgun, Reed had a chrome .25 automatic handgun with a black or brown handle, Blackman had a .45 automatic handgun, and "Two Tec" had a .9 millimeter automatic handgun. All four of them ran from Blackman's car to McCullins's house. Reed knocked on the door, and McCullins

answered the back door. As McCullins answered, Reed "upped his gun" on Walter. Defendant explained that by "upped his gun." he meant that Reed aimed his gun at McCullins. McCullins backed up into the kitchen of his apartment. Reed went into the apartment followed by Blackman, "Two Tec," and defendant. As he was going into the apartment, defendant heard Reed say "give me my mother f*** money." Defendant stated that other than the people he came with the only person he saw in the apartment was McCullins.

¶ 12     When defendant entered the kitchen, he stood on the side of the refrigerator along the left wall. He saw Reed had grabbed McCullins by the shirt and that McCullins was "almost on his knees." Defendant heard Reed say "lay your a*** down." Reed and McCullins were near the kitchen table in the center of the room, but defendant could not remember exactly where Blackman and "Two Tec" were standing.

¶ 13     Defendant heard a shot and saw Reed fall towards the living room. According to defendant, about a second passed and then 10 more shots were fired, "like pop, pop, pop." When those shots began, defendant panicked and ran out of the house and ran to Blackman's car. Blackman, Reed, and "Two Tec" were "almost right behind" him. Reed was limping as he ran. The men got back into Blackman's car, and Blackman drove away.

¶ 14     After the State rested, Doris Wilson testified for the defense that defendant was sleeping on the floor of her apartment, about a mile from the scene, at the time of the shooting. Specifically, when she left for work at about noon, defendant was still asleep. On cross-examination, Wilson admitted speaking with a female ASA at the police station but denied telling her that she saw a bundle on the living room floor when she left, meaning that she did not see defendant's face or speak with him. Wilson stated that defendant had not been sleeping with a blanket over him and she could see his face. In rebuttal, ASA Blake testified that Wilson had

spoken with her at the police station and told her that when defendant slept in Wilson's apartment on the night before the shooting, she did not see or speak to him that morning. However, ASA Blake did not record or otherwise memorialize Wilson's statement. Defense counsel did not object to Wilson's cross-examination regarding her statement to ASA Blake, nor to ASA Blake's testimony to the statement.

¶ 15    Following deliberations, the jury found defendant guilty of all charges, and subsequently the trial court sentenced defendant to a term of 60 years for the first degree murder and a term of 30 years for the home invasion, to be served concurrently, in the Illinois Department of Corrections.

¶ 16    On direct appeal, defendant argued that the trial court committed reversible error by overruling his objection to improper remarks by the State during closing arguments. Specifically, an ASA had argued that "no one would have known about [the firearms evidence] except for this defendant," when in fact the police were aware through forensic testing of the type of weapons used in the instant offenses. This court found this statement to be erroneous but not reversible because the error was cured by the jury instructions and was harmless in that defendant would have been convicted on the trial evidence regardless of the erroneous remarks. See *People v. Collins*, No. 1-98-4851 (2000) (unpublished order under Illinois Supreme Court Rule 23).

¶ 17    In November 2008, defendant filed his *pro se* postconviction petition. In his petition, defendant raised a claim of actual innocence based upon newly discovered evidence, *i.e.*, affidavits from codefendants Reed and Blackman stating that defendant did not participate in the instant offenses and from Laron Barnes corroborating Wilson's alibi testimony. He also raised claims of ineffective assistance of trial counsel for not filing a motion to suppress his statement and for not challenging a discovery violation by the State, specifically, the failure to tender

Wilson's alibi statement to ASA Blake that defendant was asleep in her apartment at the time of the shooting. Defendant also asserted that appellate counsel was ineffective for failing to raise these claims on direct appeal. Defendant attached the affidavits from Barnes, Reed, and Blackman to his petition.

¶ 18 In his affidavit, Barnes stated that he went to Wilson's apartment on "the morning of" the shooting but offered no details regarding when he arrived at or left Wilson's home. Barnes further stated that he mentioned "somebody was just shooting" and they smoked cannabis and made some food at Wilson's apartment. Blackman stated in his affidavit that defendant "was not a passenger in my vehicle, nor was he at the scene of said crime committed." In his affidavit, Reed stated that he gave "several false statement[s] in which [he] implicated" defendant. Reed further stated that he participated in the crime with Blackman and two individuals named "Micheal Adams [*sic*] and Krotaphis Thompson." According to Reed, defendant "did not take part in this crime, nor did he have any knowledge of this crime before or during the commission of this crime." Reed explained that he provided a statement implicating defendant because the police showed him photographs of defendant and told him that defendant had "just implicated" him in the murder.

¶ 19 In February 2009, the trial court summarily dismissed defendant's petition. Regarding the actual innocence claim, the court found that defendant was unable to present a claim of actual innocence because the evidence against him was "substantial" and his confession was corroborated by eyewitness testimony and testimony regarding the crime scene. As for the claim of a discovery violation, the court observed that the record indicated no statement from Wilson to ASA Blake was memorialized and, thus, it was unable to be provided to the defense.

¶ 20    Defendant appealed the dismissal to this court. This court reversed the summary dismissal and remanded for second stage proceedings. In our decision, we found that defendant's petition set forth an actual innocence claim of "arguable merit" and that the affidavits of Reed and Blackman were material and noncumulative. *Collins*, 2012 IL App (1st) 092138-U, ¶ 16. We observed that while the evidence was sufficient to affirm defendant's conviction on direct appeal, the evidence was not overwhelming. *Id.* ¶ 18. In considering whether the codefendant affidavits would be likely to change the result, this court noted that at the summary dismissal stage, "the issue before us [was] whether defendant has presented an arguable claim." *Id.* Because we remanded, we did not reach defendant's other claims raised in his petition. *Id.* ¶ 19.

¶ 21    On remand to the trial court, defendant's postconviction petition advanced to the second stage, and the trial court appointed an attorney from the public defender's office to represent defendant in November 2012. In July 2013, defendant filed a *pro se* motion to remove his postconviction counsel, arguing that his postconviction counsel failed to communicate with him, he was unable to contact his attorney, and his attorney was unprofessional. Defendant attached copies of his handwritten letters sent to his attorney. At the next status hearing, postconviction counsel informed the court that he was initially seeking a two-month continuance because he had assigned an investigator to interview the affiants to confirm what they indicated in the affidavits attached to defendant's petition. Counsel then stated that he received a copy of defendant's motion. The case was then continued by agreement. The trial court denied defendant's motion to remove counsel at the following status hearing in August 2013. Counsel noted that he had recently asked defendant for copies of the affidavits because his copy of the postconviction petition did not include all three affidavits. Counsel also had requested from defendant the

addresses and phone numbers for the affiants that were not incarcerated. He informed the court that his investigator was tasked with contacting Reed, Blackman, and Barnes.

¶ 22    At the October 2013 status hearing, postconviction counsel informed the court that he was currently involved in the investigation of defendant's case and his investigator was in the process of trying to interview the affiants. Counsel also stated that he was trying to obtain the trial file. At the December 2013 status hearing, counsel told the court that he was "about 90 percent finished" with his investigation and was waiting on the trial file. In February 2014, counsel informed the court that he was prepared to file his certificate in accordance with Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)) that day. Counsel's Rule 651(c) certificate was filed and stated:

> "1. I have consulted with petitioner, Deshawn Collins, by letter to ascertain his contentions of deprivation of constitutional rights.
>
> 2. I have examined the Report of Proceedings of the trial concerning Indictment Number 97 CR 096909 - 02 which trial was heard by the Honorable John Moran.
>
> 3. I have examined petitioner's Pro Se Petition for Post-Conviction Relief, and as it adequately presents his claim of deprivation of constitutional rights, have deemed it unnecessary to amend or supplement[ ] his *pro se* petition."

¶ 23    At a status hearing in October 2014, the prosecutor informed the trial court that defendant had mailed a *pro se* amended petition in April 2014 and asked for leave to file a motion to dismiss that pleading. Defendant's *pro se* amended petition is not included in the record on appeal. Postconviction counsel stated he reviewed defendant's *pro se* amended petition and did

not find anything that would change his position in his Rule 651(c) certificate. The court granted the State's motion to dismiss defendant's *pro se* amended petition.

¶ 24    In May 2016, the State filed its motion to dismiss defendant's original postconviction petition and argued that (1) defendant failed to establish that the evidence to support his actual innocence claim was newly discovered, material, and of such conclusive character that it would change the result on retrial; (2) defendant failed to establish a cognizable claim of ineffective assistance of counsel; and (3) the remaining claims were either barred by *res judicata*, waiver, or were not cognizable in postconviction proceedings. Counsel filed a response to the motion to dismiss in September 2016 and contended that Reed's affidavit satisfied the requirements for an actual innocence claim because it was newly discovered, material, noncumulative, and exonerated defendant. Following arguments on the motion in November 2016, the court took the case under advisement.

¶ 25    In January 2017, the trial court granted the State's motion to dismiss in an oral ruling. Regarding the actual innocence claim, the court found defendant's evidence was not newly discovered and defendant offered "no showing of the exercise of due diligence in obtaining the information in the affidavits." The court observed that the affidavits did not contain any facts that defendant would not have known at or prior to his trial. The evidence was also not material and of such a conclusive nature that it would probably change the result on retrial. The court pointed out that codefendants Reed and Blackman did not "inculpate themselves, indicate that there was a plan that they discharged weapons or that they were there at all." The court further observed that Reed's statement that he implicated defendant after police showed him defendant's photograph and said defendant had implicated him was contradicted by the record. The court also found that Barnes's affidavit was not newly discovered because defendant was the source of

this evidence and the affidavit did not specify when Barnes saw defendant at Wilson's apartment. The court denied all other claims in the petition.

¶ 26    This appeal followed.

¶ 27    The Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 to 122-8 (West 2016)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *Id.* § 122-1(a); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 28    At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). "The petition may not be dismissed as untimely at the first stage of the proceedings." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). If the circuit court does not dismiss the postconviction petition as frivolous or patently without merit, then the petition advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122-4 (West 2016)), and the State is allowed to file responsive pleadings

(*id.* § 122-5). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2016).

¶ 29    On appeal, defendant first argues that he received unreasonable assistance from his postconviction counsel. Specifically, defendant contends that (1) counsel failed to examine the complete trial record and only reviewed the report of proceedings of the trial; (2) counsel failed to make any amendment or supplement to defendant's postconviction petition; and (3) counsel failed to communicate with defendant to ascertain his contentions. The State maintains that postconviction counsel provided reasonable assistance to defendant as required under Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)).

¶ 30    The right to counsel in postconviction proceedings is statutory as provided in the Post-Conviction Act, not a constitutional right. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Further, "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Rule 651(c) provides that postconviction counsel file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of deprivation of constitutional right, (2) examined record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Strict compliance with Rule 651(c) is not

required, rather substantial compliance is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008) (citing *People v. Wright*, 149 Ill. 2d 36, 63 (1992)).

¶ 31 "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.* We review whether counsel substantially complied with Rule 651(c) *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 32 Here, postconviction counsel filed his Rule 651(c) certificate in February 2014, which stated:

> "1. I have consulted with petitioner, Deshawn Collins, by letter to ascertain his contentions of deprivation of constitutional rights.
>
> 2. I have examined the Report of Proceedings of the trial concerning Indictment Number 97 CR 096909 - 02 which trial was heard by the Honorable John Moran.
>
> 3. I have examined petitioner's Pro Se Petition for Post-Conviction Relief, and as it adequately presents his claim of deprivation of constitutional rights, have deemed it unnecessary to amend or supplement[ ] his *pro se* petition."

¶ 33 Defendant first contends that counsel failed to adequately examine the complete trial record because counsel's certificate stated that he examined the "Report of Proceedings" of the trial rather than the "record of the proceedings of the trial" as provided in Rule 651(c). See Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Defendant assumes that counsel's statement is evidence that

counsel did not read the common law record, the sentencing hearing, pretrial records, or any exhibits.

¶ 34    "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Pendleton*, 223 Ill. 2d at 475-76 (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). Other than counsel's language in the certificate, defendant has failed to show that counsel's examination of the record was insufficient. He does not point to any errors or misstatements in court but rather assumes that counsel failed to substantially comply. Defendant has not overcome the presumption that counsel substantially complied with Rule 651(c).

¶ 35    We find this court's decision in *Richardson*, 382 Ill. App. 3d 248, to be analogous. In that case, we found a Rule 651(c) certificate to be sufficient where postconviction counsel "consulted with [the defendant] by letters," "obtained and examined the report of proceedings [in the defendant's] trial," and "prepared a supplemental petition for postconviction relief 'augmenting [the defendant's] previously filed Petition.' " *Id.* at 251. The reviewing court found that counsel had substantially complied with Rule 651(c) despite the "alleged shortcomings" of the certificate. *Id.* at 257. The court further observed that were it "to find counsel's certificate in this case insufficient to pass muster under Rule 651(c), we would be hard-pressed to conceive of a certificate that would demonstrate counsel's compliance, short of one that exactly mirrors the language of the rule." *Id.*

¶ 36    Here, postconviction counsel stated in his certificate that he examined the report of proceedings and defendant's postconviction petition. Additionally, postconviction counsel informed the trial court at a status hearing that he was trying to obtain defendant's trial file for his investigation of defendant's postconviction claims. We find that counsel substantially

complied with Rule 651(c). Nothing in the record suggests that counsel failed to examine all relevant portions of the record. Since counsel filed a Rule 651(c) certificate, defendant has not overcome the presumption that counsel substantially complied in this argument.

¶ 37    Defendant also asserts that postconviction counsel provided unreasonable assistance because he failed to make any necessary amendments and supplements to his postconviction petition. Specifically, defendant claims counsel should have amended or supplemented his petition with (1) a new claim alleging newly discovered evidence of a discovery violation based on a police report indicating that a man had been arrested fleeing the scene with a .45-caliber handgun; (2) an affidavit from Keith Johnson, who was present when Officer Sabatini arrived at the crime scene; and (3) amended affidavits from Blackman and Barnes to correct inadequacies. Defendant also contends that counsel failed to obtain an affidavit from him to support his claims of actual innocence and a coerced confession by explaining his inculpatory statement and supporting his alibi. We note that neither the police report nor the Johnson affidavit is contained in the record on appeal. The only support for their existence is a copy of a handwritten letter from defendant to counsel alleging his possession of this alleged evidence and defendant's intent to forward it to his attorney. Defendant, as the appellant, bears the burden of providing a sufficiently complete record to support its claims of error. *People v. Smith*, 406 Ill. App. 3d 879, 886 (2010); see also *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubt arising from the incompleteness of the record will be construed against defendant. *Smith*, 406 Ill. App. 3d at 886; *Foutch*, 99 Ill. 2d at 391-92.

¶ 38    "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim,

they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The supreme court has "repeatedly held that the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *Perkins*, 229 Ill. 2d at 43-44 (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003)).

¶ 39    Additionally, the supreme court in *Pendleton* observed that " '[p]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 472 (quoting *Davis*, 156 Ill. 2d at 164). "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Id.* at 475-76 (quoting *Davis*, 156 Ill. 2d at 164). " '[P]ostconviction counsel is not required to comb the record for issues not raised in the defendant's *pro se* postconviction petition.' " *People v. Rials*, 345 Ill. App. 3d 636, 641 (2003) (quoting *People v. Helton*, 321 Ill. App. 3d 420, 424-25 (2001)). A postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims." *Davis*, 156 Ill. 2d at 163.

¶ 40    Here, postconviction counsel provided reasonable assistance and was not obligated to raise new claims in an amended or supplemental petition. We cannot fully review the first two claims made by defendant because the record does not contain the police report involving the arrest of another man with .45-caliber handgun or an affidavit from Keith Johnson. However, to the extent we can consider these claims, neither claim had merit based on the record.

¶ 41    First, defendant contends that he had evidence of a discovery violation based on a police report of a man arrested while fleeing the scene with a .45-caliber handgun. Even if true, defendant has failed to set forth how a discovery violation based on this police report constituted a constitutional violation. The evidence at trial disclosed that four men committed the crime, but

only three were identified: defendant, Reed, and Blackman. In his statement, defendant indicated that the fourth man was nicknamed Two Tec and defendant did not know his real name. Defendant further stated that he was armed with a .380-caliber firearm while Blackman had a .45-caliber handgun, Reed a .25-caliber hand, and Two Tec a 9-millimeter handgun. Defendant does not explain how this alleged fourth suspect would have impacted defendant's culpability for his involvement in the crime. As previously stated, postconviction counsel is only required to investigate and properly present defendant's claims. *Pendleton*, 223 Ill. 2d at 472. Accordingly, postconviction counsel was under no duty to amend defendant's petition to raise a discovery violation based on his police report.

¶ 42    Second, according to defendant, Johnson was present when the murder occurred and opened the door for Officer Sabatini. However, contrary to defendant's argument, Officer Sabatini's testimony did not indicate that Johnson was present at the time of the murder. Officer Sabatini observed four men exit a vehicle and run to the back of the building, followed by the sound of several gunshots, and then the men ran back to the vehicle. Officer Sabatini and her partner then ran from their second floor position nearby to the location where the gunshots had been fired. When she arrived at the scene, Officer Sabatini saw Johnson "in the doorway of the apartment in the kitchen," and Johnson was distraught and hysterical. She did not testify that Johnson opened the door for her. No further testimony was provided placing Johnson at the scene at the time of the murder, and Johnson did not testify at trial.

¶ 43    Defendant offers no argument regarding the contents of Johnson's affidavit or how this affidavit would be exculpatory. Defendant's letters to postconviction counsel mentioned the existence of the affidavit and having a copy forwarded to counsel. The trial record does not support defendant's contention that Johnson's affidavit would have supported his claim of actual

innocence. Since it was defendant's burden to provide a complete record, any doubt arising from the absence of this affidavit in the record shall be construed against defendant. See *Smith*, 406 Ill. App. 3d at 886. Absent the affidavit, we presume that postconviction counsel acted reasonably in deciding not to amend or supplement defendant's petition with Johnson's affidavit.

¶ 44    Third, defendant asserts that postconviction counsel failed to investigate his claims and cure any deficiencies in the affidavits from Blackman and Barnes. Blackman's affidavit failed to state that he participated in the murder while Barnes's affidavit was ambiguous about the time he was with defendant on the day of the murder. During a status hearing, postconviction counsel informed the trial court that his investigator was in the process of trying to interview the affiants. Counsel later told the court that he had completed the investigation. No amended affidavits were filed. Defendant claims that the failure to obtain proper affidavits was unreasonable.

¶ 45    As previously observed, the filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance and it is defendant's burden to overcome this presumption. *Profit*, 2012 IL App (1st) 101307, ¶ 19. Since postconviction counsel filed a Rule 651(c) certificate, we presume that he was unable to cure the affidavits from Blackman or Barnes. The record only indicates that counsel conducted an investigation and his investigator sought to interview Blackman and Barnes. But there is nothing in the record to indicate counsel or his investigator found either of these men or that the men were willing to provide a new affidavit. Since counsel indicated that he investigated the affiants and no amended affidavits were filed, we must presume that the investigation was not successful. Accordingly, defendant has failed to rebut this presumption that postconviction counsel substantially complied with Rule 651(c).

¶ 46    Defendant further contends that postconviction counsel failed to provide an affidavit

from defendant to support his claims of a coerced confession and actual innocence. According to defendant, his affidavit would have provided "his account to further support his alibi and explain his inculpatory statement." However, "evidence is newly discovered where it was discovered after trial and where the petitioner could not have discovered it earlier through the exercise of due diligence." *People v. Robinson*, 2020 IL 123849, ¶ 53. An affidavit from defendant would not have constituted newly discovered evidence. *Id.* ("By its own terms, petitioner's affidavit demonstrates that the information contained therein was known to him before trial and had been communicated to police detectives and to his trial counsel. Also, to the extent that the affidavit includes information that can be construed as alibi evidence, petitioner obviously was aware of that information prior to trial ***."). An affidavit from defendant regarding his actual innocence and a claim of a coerced confession were known to him prior to trial, but these claims were not previously raised. Postconviction counsel was not unreasonable for failing to amend or supplement defendant's petition with defendant's own affidavit.

¶ 47     Defendant also contends that his postconviction counsel failed to consult with him to ascertain his claims. According to defendant, while counsel claimed in his Rule 651(c) certificate to have consulted with defendant by letter, the record shows that counsel failed to discuss all of defendant's claims and ignored defendant's repeated attempts to communicate with him. Defendant further asserts that counsel failed to speak with him about the claims raised in defendant's *pro se* amended petition. Defendant argues that this deficient communication failed to comply with Rule 651(c).

¶ 48     The consultation duty under Rule 651(c) can be satisfied in one conversation between attorney and defendant. *People v. Turner*, 187 Ill. 2d 406, 410-11 (1999). In *Turner*, the supreme court rejected the defendant's argument that his postconviction counsel provided inadequate

representation because they met only once in a two-year period. *Id.* The *Turner* court held that "there is no reason as a matter of law why this [consultation requirement] cannot be accomplished in one meeting with defendant." *Id.* at 411.

¶ 49    The record shows multiple letters were sent by postconviction counsel to defendant. While the letters were brief, counsel kept defendant apprised of the status of the case and requested missing affidavits to allow for a full investigation. Further, the bulk of defendant's argument relates to his counsel failing to discuss new claims defendant wished to raise in an amended petition. However, as previously noted, defendant was not entitled to the advocacy of postconviction counsel for purposes of exploration, investigation, and formulation of potential claims. *Davis*, 156 Ill. 2d at 163. Postconviction counsel was only required to investigate and properly present defendant's raised claims. *Pendleton*, 223 Ill. 2d at 472. Thus, postconviction counsel was not obligated to engage in communication about potential new claims for defendant's petition. The record shows counsel engaged in communication with defendant, and while not the communication defendant wanted, this contact was sufficient to satisfy Rule 651(c). Accordingly, postconviction counsel provided reasonable assistance under Rule 651(c).

¶ 50    Next, defendant argues that his postconviction petition set forth a substantial showing of actual innocence based on the exonerating affidavits of codefendants Blackman and Reed. According to defendant, both men swore defendant was not with them during the shooting, and Reed also swore that he provided false information implicating defendant to police. The State responds that neither affidavit from Reed nor Blackman are of such conclusive character as to probably change the result on retrial. Defendant only relies on the affidavits from Reed and Blackman, and not Barnes's affidavit, to support his actual innocence claim, and thus, we will only consider those two affidavits.

¶ 51    To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Robinson*, 2020 IL 123849, ¶ 47; see also *People v. Jackson*, 2021 IL 124818, ¶ 41. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Robinson*, 2020 IL 123849, ¶ 47. Evidence is material if it is relevant and probative of the petitioner's innocence. *Id.* Noncumulative evidence adds to the information that the fact finder heard at trial. *Id.* "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* The conclusive character of the new evidence is the most important element of an actual innocence claim. *Id.* Recanted testimony is considered inherently unreliable, and a court will not grant a new trial on that basis unless there are extraordinary circumstances. *People v. Sanders*, 2016 IL 118123, ¶ 33. However, when the State moves to dismiss a petition during the second stage of postconviction proceedings, the credibility of recanted testimony is not considered because all well-pleaded facts must be taken as true. *Id.*

¶ 52    Here, defendant contends that this court has already ruled that these affidavits are newly discovered, material, and noncumulative and taken together would likely change the result on retrial. Defendant cites this court's decision reviewing the first stage dismissal of his petition but fails to recognize that there are different standards for first and second stage postconviction review. See *Collins*, 2012 IL App (1st) 092138-U, ¶¶ 16-18.

¶ 53    In our previous decision, we found that defendant's actual innocence claim had "arguable merit" and reviewed whether defendant had set forth the gist of a claim of actual innocence. *Id.* ¶ 16. In considering Reed's affidavit, we observed that his "key averment, that he implicated

21

defendant upon being told by police detectives that defendant had implicated him, is not a fanciful—that is, fantastic or delusional—allegation meriting summary dismissal." *Id.* Further, this court did not conclude that these affidavits would likely change the result on retrial, but rather we observed that "the issue before us is whether defendant has presented an arguable claim." *Id.* ¶ 18. At the second stage, we now must consider whether defendant has made a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 381. Thus, our first-stage findings do not preclude our review at the second stage.

¶ 54    Defendant maintains that the affidavits from Blackman and Reed satisfy the actual innocence requirements; *i.e.*, they are newly discovered, material, noncumulative, and of such conclusive character that it would likely change the result on retrial. As previously observed, the conclusive character of the new evidence is the most important element of an actual innocence claim. *Robinson*, 2020 IL 123849, ¶ 47. This court "must be able to find that petitioner's new evidence is so conclusive that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Sanders*, 2016 IL 118123, ¶ 47. "Well-pleaded factual allegations of a postconviction petition and its supporting evidence must be taken as true unless they are positively rebutted by the record of the original trial proceedings." *Id.* ¶ 48. We will consider this element first and find it dispositive to defendant's claim.

¶ 55    Reed stated in his affidavit that on March 5, 1997, he gave several false statements that implicated defendant in McCullins's murder. Reed averred that he participated in the crime with Blackman and two other men named "Micheal [*sic*] Adams[ ] and Krotaphis Thompson." He further stated that defendant did not take part in the crime, nor did he have any knowledge of the crime before or during the commission of the crime. According to Reed, he was questioned by detectives at the hospital and during the questioning, the detectives showed him photographs of

defendant and told him that defendant had implicated Reed in the murder. Reed then signed a statement claiming defendant committed the murder. Notably, Reed does not offer any details of the crime in his affidavit.

¶ 56    While we are to consider all well pled facts as true, Reed's recantation in his affidavit is positively rebutted by the record because Reed spoke with police and gave his statement before defendant had been arrested. Detective Ayers testified that he questioned Reed in the hospital on March 5, 1997, the same day of the shooting, and following that conversation, the police were searching for other suspects. Reed admits that he gave a statement implicating defendant on March 5. However, Detective Leracz testified that defendant was arrested two days later, March 7, 1997. This testimony is corroborated by the arrest report in the record which showed that defendant was arrested on March 7, 1997. While being interviewed by ASA Blake, she allowed defendant to read Reed's statement, and then defendant agreed to provide a statement confessing to his participation in the crime. Since defendant was not in custody at the time Reed implicated him, Reed's statements in his affidavit are therefore positively rebutted by the record.

¶ 57    Moreover, Reed never stated in his affidavit that he was willing to testify regarding his recanted statement. "Evidence supporting defendant's post-conviction allegations must be accompanied by an affidavit which identifies with reasonable certainty the source, character, and availability of the alleged evidence." *People v. Johnson*, 183 Ill. 2d 176, 190 (1998); see also *People v. Jones*, 399 Ill. App. 3d 341, 366-67 (2010) (finding a codefendant's affidavit to be flawed because it did not contain a statement that he would testify to the facts alleged in his affidavit). Since Reed's recantation has been positively rebutted by the record and he failed to identify his willingness to testify, we conclude that Reed's affidavit is not of such conclusive character as would probably change the result on retrial.

¶ 58    In his affidavit, Blackman averred that it was previously stated that defendant was a passenger in his vehicle right before the commission of the crime. However, he was willing to testify under oath that defendant was not a passenger in his vehicle, nor was he at the scene of the crime. Specifically, Blackman's affidavit offered the limited statement as follows.

> "I [W]alter Blackman would testify against was previously stated. On March-05-1997, it was stated that the defendant Deshawn Collins was a passenger in my vehicle, right before the commission of said crime. However, I am willing to testify under oath, and willing to submit to a polygraph test, provided and conducted by the states attorney office, stating the facts that Deshawn Collins was not a passenger in my vehicle, nor was he at the scene of said crime committed."

Significantly, Blackman's affidavit offers no details of the crime, never placed himself at the scene of the crime, and never admitted his participation.

¶ 59    The *Jones* decision provides support for our analysis. There, the defendant raised a claim of actual innocence in his postconviction petition based on an affidavit from a codefendant. *Jones*, 399 Ill. App. 3d at 354. In his affidavit, the codefendant stated that he was "solely responsible" and he falsely implicated the defendant after the police offered leniency. *Id.* The trial court summarily dismissed the defendant's petition. On appeal, the reviewing court rejected the defendant's claim of actual innocence based on the codefendant's affidavit because the affidavit was not of such conclusive character as to probably change the result on retrial. *Id.* at 366. Specifically, the *Jones* court observed that the codefendant never inculpated himself. Rather, the court found the codefendant's

> "gratuitous acknowledgment of being 'solely responsible' is simply a meaningless assemblage of words that could simply acknowledge that the events leading to

[the victim's] demise were precipitated by the beating he suffered in the presence of his girlfriend. Thus viewed, the affidavit is simply a benign gesture; it reveals no facts upon which a meaningful prosecution of [the defendant] could be pursued." *Id.*

¶ 60 Similarly, Blackman's affidavit fails to set forth any details of the crime, including any reference to the victim, McCullins. Blackman fails to even state what crime occurred. This affidavit is even weaker than in *Jones*, where Blackman offers scant details of the crime and failed to admit any responsibility in the murder. As in *Jones*, his affidavit is a "benign gesture," and thus, it lacks any conclusive character to change the result on remand.

¶ 61 We find the supreme court's decision in *Sanders* to be instructive. There, the defendant was convicted of first degree murder and aggravated kidnaping. At trial, two codefendants testified for the State and detailed the defendant's participation in the crimes. *Sanders*, 2016 IL 118123, ¶¶ 1, 4-12. The defendant eventually filed a successive postconviction petition asserting newly discovered evidence of actual innocence, which was supported in part by excerpts from a codefendant's testimony in another proceeding and an eyewitness's affidavit. *Id.* ¶ 14. The trial court advanced the petition to second-stage proceedings. *Id.* ¶¶ 17-18. The State filed a motion to dismiss, which the circuit court granted. *Id.* ¶ 19. The appellate court affirmed the dismissal. *Id.* ¶ 20.

¶ 62 On appeal to the supreme court, the *Sanders* court affirmed the dismissal and concluded that the defendant failed to make a substantial showing of a claim of actual innocence. *Id.* ¶ 55. The court stated that even assuming the codefendant's recantation and the witness's affidavit were newly discovered, material, and noncumulative, the evidence was not of such conclusive character that it would probably change the result on retrial. *Id.* ¶ 47. The codefendant's

recantation "conflict[ed] with much of the evidence" at the defendant's trial. *Id.* ¶ 48. For instance, the pathologist had testified that the victim was shot twice, while the codefendant stated in his recantation that he shot the victim only once. *Id.* In addition, the eyewitness testified that three armed men, one of whom he later identified as the defendant, took the victim from another codefendant's house, and the codefendant's testimony placed the defendant at the house during the lead-up to the incident and identified the defendant as one of the men involved in taking the victim from the house. *Id.* ¶¶ 48-49, 51.

¶ 63 The supreme court concluded that the codefendant's recantation conflicted not only with his trial testimony, but also with the testimony of other witnesses, including another codefendant, as well as with the pathologist's testimony that the victim had been shot twice. *Id.* ¶ 52. The codefendant's "recantation testimony merely adds conflicting evidence to the evidence adduced at the trial. Even taking the well-pleaded facts as true, we conclude that the recantation is not of such conclusive character as would probably change the result on retrial." *Id.* Similarly, the supreme court found the eyewitness's affidavit "merely contradicted" other witness's testimony and held that her "proposed testimony would merely add to the evidence the jury heard at petitioner's trial. It is not so conclusive in character as would probably change the result on retrial, either by itself or in conjunction with [the codefendant's] recantation."

¶ 64 *Sanders* is relevant to this case because the defendant's postconviction petition was at the same procedural stage, *i.e.*, whether the defendant had set forth a substantial showing of an actual innocence claim. While neither Reed nor Blackman testified at defendant's trial, their affidavits "merely contradict" the trial evidence, which included defendant's own detailed confession. As in that case, Reed's affidavit is rebutted by the record. Blackman's affidavit fails to provide any admission by him that he participated in the crime and who the other perpetrators

were. He simply stated that defendant was not a passenger in his car, nor at the crime scene.

¶ 65    Although the evidence of defendant's guilt was not overwhelming, the evidence, including defendant's detailed confession, was sufficient to support his conviction. "It has been observed that 'a confession is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable.' " *People v. Simpson*, 2015 IL 116512, ¶ 36 (quoting *People v. R.C.*, 108 Ill. 2d 349, 356 (1985)).

¶ 66    ASA Blake read defendant's seven-page confession into the record, and the statement was admitted as evidence. Defendant detailed how he was walking to the store around 11 a.m. on March 5, 1997, when he saw Blackman's car with Reed as a passenger. The men told defendant that they were going to McCullins's house to recover money belonging to Reed that had been stolen by two other individuals, and defendant agreed to go with them. The men subsequently met up with a fourth friend. Defendant described the guns the four men had at the scene: defendant had a .38-caliber, Blackman a .45-caliber, Reed a .25-caliber, and the fourth man had a 9-millimeter. Defendant further detailed the men's arrival at McCullins's house including the back entry into the kitchen and where the men were standing. He stated that he heard a shot and saw Reed fall towards the living room. A moment later, defendant heard "about ten more shots" and then he panicked and ran to Blackman's car followed by the other three men.

¶ 67    Defendant's confession was corroborated by additional evidence presented at trial. Officer Sabatini testified that she observed four men leave Blackman's vehicle, run towards the rear of a building, and then she heard multiple gun shots and saw the men running back to the vehicle with one man appearing to be injured. Further, the forensics evidence found bullet casings for multiple firearms, a .38-caliber, a .45-caliber, and a 9-millimeter. For the reasons stated, neither Reed's affidavit nor Blackman's affidavit, viewed separately or collectively, set

forth a substantial showing of a claim of actual innocence where the affidavits were not of such a conclusive character to probably change the result. Accordingly, defendant's claim of actual innocence was properly dismissed at the second stage of proceedings.

¶ 68     Defendant next asserts that his petition made a substantial showing of ineffective assistance of trial and appellate counsel for failing to object to a discovery violation by the State or raise this claim on direct appeal. Specifically, defendant contends that the State failed to disclose ASA Blake's unmemorialized statement from Wilson as rebuttal testimony, nor did the State reveal its intent to call ASA Blake as a rebuttal witness. According to defendant, this failure to disclose by the State violated Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) and his trial and appellate counsel were ineffective for failing to challenge the issue. The State responds that it had no obligation to disclose Wilson's statement to ASA Blake because it was not reduced to writing and it disclosed ASA Blake as a rebuttal witness when the intent was formed to call her to testify.

¶ 69     Initially, we must address the State's contention that defendant did not include this claim in his postconviction petition and, thus, has forfeited the claim on appeal. After reviewing defendant's *pro se* petition, we find that defendant sufficiently set forth a claim of a discovery violation under Rule 412 for failing to disclose Wilson's statement given at the police station and that his trial counsel was ineffective for failing to object to this error and preserve it in a posttrial motion. Additionally, defendant asserted that his appellate counsel was ineffective for failing to raise the "attached claims in this petition which were obvious from the appellate record." Accordingly, we will consider the merits of defendant's claim.

¶ 70     Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court

delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant. *Id.* at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 162-63 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. *Id.* at 697.

¶ 71    A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues that, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Id.* Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 72　Before considering whether trial and appellate counsel were ineffective, we must determine whether a discovery violation occurred. Rule 412(a) provides: "If the State has obtained from the defendant, pursuant to Rule 413(d), information regarding defenses the defendant intends to make, it shall provide to defendant *** a specific statement as to the substance of the testimony such witnesses will give at the trial of the cause." Ill. S. Ct. R. 412(a) (eff. Mar. 1, 2001). Therefore, under Rule 412(a), the State must tender to defendant the identity of a rebuttal witness and a specific statement regarding the substance of that witness's testimony. *Id.* The State's duty to disclose a rebuttal witness arises when the State has formed the intent to call such witness. *People v. Hood*, 213 Ill. 2d 244, 259 (2004). Since rebuttal testimony is intended to explain, contradict, or disprove the defendant's evidence, the State typically cannot know the need for rebuttal until after the defense testimony is heard. *Id.* Thus, the State's intent to call a rebuttal witness often does not arise until after the defense has presented its case. *Id.*

¶ 73　"The purpose of the discovery rule is to afford the accused protection against surprise, unfairness, and inadequate preparation and to afford the defendant an opportunity to investigate the circumstances from which the evidence arose." *People v. Cunningham*, 332 Ill. App. 3d 233, 249 (2002) (citing *People v. Robinson*, 157 Ill. 2d 68, 79 (1993)). Although the requirements of discovery are mandatory, reversal is not required unless surprise or undue prejudice has been shown. *People v. Woods*, 2011 IL App (1st) 091959, ¶ 26. It is the defendant's burden to establish that he was prejudiced by a discovery violation. *Hood*, 213 Ill. 2d at 258.

¶ 74　In his answer to the State's motion for pretrial discovery, defendant disclosed that he would "introduce evidence that at the time of these offenses he was at 1118 E. 132nd Street, block 2 in Chicago Illinois." He did not list Wilson as a witness nor disclose any additional details of his alibi defense. In his discovery motion, defendant requested that the State disclose

any witnesses intended to be called in rebuttal "and a specific statement as to the substance of the testimony such witnesses will give at the trial." It is uncontested that the State listed ASA Blake as a potential witness in its discovery response, but there is no indication in the record that the State disclosed ASA Blake as a rebuttal witness nor tendered such a statement regarding ASA Blake's rebuttal testimony.

¶ 75 During defense counsel's cross-examination of ASA Blake in the State's case-in-chief, ASA Blake disclosed that she spoke with Wilson in the felony review office at Area 2. No questions were asked as to the substance of the conversation. In her testimony, Wilson testified that defendant was sleeping on the floor of her apartment, about a mile from the scene, at the time of the shooting. When she left for work at about noon, defendant was still asleep. On cross-examination, Wilson admitted to speaking with a female ASA at the police station but denied telling her that she saw a bundle on the living room floor when she left, meaning that she did not see defendant's face or speak with him. Wilson stated that defendant had not been sleeping with a blanket over him and she could see his face. In rebuttal, ASA Blake testified that Wilson spoke with her at the police station and told her that when defendant slept in Wilson's apartment on the night before the shooting, she did not see or speak to him that morning. On cross-examination, ASA Blake stated that she did not record or otherwise memorialize Wilson's statement. No objection was made by defense counsel to the cross-examination of Wilson regarding her statement to ASA Blake, nor to ASA Blake's testimony to the statement.

¶ 76 Defendant argues that the State knew of Wilson's account in March 1997 when she spoke with ASA Blake at the police station and that defendant intended to present an alibi defense that he was at Wilson's address. According to defendant, based on this information, the State knew "long before Wilson testified" that ASA Blake was needed as a rebuttal witness and failed to

disclose her statement or her name as a rebuttal witness. However, defendant's contention is premised on an assumption that the State knew Wilson's testimony would differ from what she told ASA Blake, which would necessitate ASA Blake's rebuttal testimony. Rather, the record shows that State's intent to call ASA Blake as a rebuttal witness was not formed until after Wilson testified to an account that differed from her initial statement. Since the State did not form its intent to call ASA Blake in rebuttal until after Wilson testified, the State did not engage in a discovery violation.

¶ 77 Further, it is unclear how defendant was surprised by ASA Blake's rebuttal testimony after she had disclosed in her cross-examination that she spoke with Wilson at the police station and Wilson confirmed she spoke with an ASA at the police station. Even if defendant had not been aware of the conversation prior to trial, he was made aware when defense counsel elicited this testimony while questioning ASA Blake.

¶ 78 Moreover, even if we assume the State violated Rule 412 and that his attorneys' performances were deficient, which we do not find, defendant has failed to establish the requisite prejudice under the *Strickland* requirements for ineffective assistance of trial and appellate counsel. Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Defendant contends that he was prejudiced because the alleged discovery violation allowed his sole alibi witness to be impeached. According to defendant, if his trial counsel had objected or requested a continuance, then counsel would have had the opportunity to investigate ASA Blake's testimony, find new evidence, or "convince [ASA] Blake that she misunderstood what Wilson meant or failed to remember the specifics" of the conversation. This is not sufficient to undermine confidence in the outcome of the trial.

¶ 79     As discussed above, defendant knew Wilson had spoken with ASA Blake at the time she was called to testify regarding his alibi. Defense counsel questioned ASA Blake during cross-examination about her failure to memorialize Wilson's statement. Counsel asked ASA Blake if she wrote any felony review memos regarding McCullins's death, and ASA Blake indicated that she had. Counsel asked, "you spoke to Ms. Wilson and she said that he was at her home?" ASA Blake answered, "That's what she said, yes." Counsel then asked, "But you didn't see fit to put that down on any paper anywhere," and ASA Blake responded that she did not. Counsel's cross-examination effectively called the reliability of ASA Blake's rebuttal testimony into question.

¶ 80     We find defendant's reliance on *People v. Hood*, 229 Ill. App. 3d 202 (1992), to be misplaced. In that case, the defendant was convicted of murder following a third trial. During the trial, the prosecutor from the defendant's first trial was called as a rebuttal witness to impeach an eyewitness called by the defense. *Id.* at 209, 213. On appeal, defendant argued that he was denied a fair trial because the former prosecutor "deliberately" volunteered testimony about the defense eyewitness. While the trial court sustained an objection and struck the testimony, the reviewing court found the testimony prejudicial. *Id.* at 214. The *Hood* court further found this error was "compounded" because the State did not provide timely notice of its intent to call the former prosecutor as a rebuttal witness and did not tender the substance of the statements. *Id.* The reviewing court specifically found that the record showed the State intended to call the former prosecutor in its rebuttal before the defense eyewitness testified. *Id.* at 216. The eyewitness had testified in the first trial and was scheduled to testify in the second trial before a mistrial occurred. *Id.* Thus, the court concluded that the State knew what the defense eyewitness's testimony would be and "it seems improbable that the State did not form the intent" to call the former prosecutor in rebuttal until after the witness testified. *Id.* The reviewing court

33

concluded that the defendant was entitled to a new trial because the undisclosed testimony was damaging, and the State willfully failed to disclose it. *Id.*

¶ 81    Unlike *Hood*, there is no suggestion on the record that the State willfully failed to disclose ASA Blake as a rebuttal witness prior to Wilson's testimony. In this case, the record shows that the State did not form its intent to call ASA Blake in rebuttal until after Wilson testified. There was no prior indication that Wilson's testimony would differ from her statement to ASA Blake. Defendant has failed to establish that he was prejudiced by his trial counsel's failure to object to ASA Blake's rebuttal testimony, such that the result of the proceeding would have been different. Similarly, it follows that defendant cannot show prejudice based on his appellate counsel's failure to raise a nonmeritorious issue. *Simms*, 192 Ill. 2d at 362. Accordingly, defendant failed to set forth a substantial showing of a claim of ineffective assistance of trial and appellate counsel. The trial court properly dismissed this claim in defendant's postconviction petition at the second stage of postconviction proceedings.

¶ 82    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 83    Affirmed.

---

**No. 1-17-0597**

---

| | |
|---|---|
| **Cite as:** | *People v. Collins*, 2021 IL App (1st) 170597 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 97-CR-9609(02); the Hon. Arthur F. Hill Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Drew A. Wallenstein, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Jon J. Walters, and Paul E. Wojcicki, Assistant State's Attorneys, of counsel), for the People. |

---